JOHN SMOLINSKI, APPELLEE, v. DAVID MARKEL ET AL., APPELLANTS.

FILED APRIL 29, 1933. No. 28507.

*Crossman, Munger & Barton* and *Story & Thomas,* for appellants.

*Wear, Moriarty, Garrotto & Boland, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is an action for personal injuries resulting from an automobile accident which happened near the east end of the Bancroft street viaduct in the city of Omaha at 2:45 p. m. on September 30, 1931. The occurrence of the accident, due to defendants' negligence substantially as alleged by plaintiff, is not controverted by the defendants. No objections to the instructions of the district court to the jury in the submission of the cause for their determination is now urged on appeal. The sole substantial complaint now presented is that the verdict in favor of the plaintiff is excessive.

As to the injuries suffered by the plaintiff, his petition alleges, in part:

"That as the direct and proximate result of the negligence of the defendants * * * plaintiff was thrown to the hard surface of the pavement and received a compound comminuted fracture of the left arm between the shoulder and elbow, multiple bruises, contusions and lacerations about the entire body, and a severe shock to his general mental, physical and nervous system, all of which injuries caused plaintiff to suffer great and excruciating pain and suffering and will continue to cause plaintiff great pain and suffering in the future."

These allegations were denied generally by the defendants. A trial to a jury resulted in a verdict and judgment of $10,000 against the defendants. From the order overruling their motion for a new trial, defendants appeal.

That plaintiff's injuries were severe in nature, included a compound comminuted fracture of the left arm, and resulted in intense suffering, especially during the early days of their treatment, must be conceded. It seems that for the thirty days after the accident he was confined to the hospital for treatment. At the time of the trial in the district court, which took place on March 21, 1932, he was still under his surgeon's care, and was being treated from two to three times a week. There is evidence in the record that these treatments will have to be continued for "six months to eighteen months more." It stands uncontroverted that he was physically incapable of performing any of his usual work from the date of the accident to the date of trial. His physicians testify that he will never be able to follow his usual occupation again because his injured arm will be incapable of performing it. It also appears that prior to the accident his life work had been the performance of unskilled heavy physical labor; that he was 51 years of age, had an expectancy of 20.20 years, had been earning from $15 to $18 a week, and during the previous year had worked three-fourths of the time. It must be conceded that on the subject of plaintiff's actual physical condition at the time of the trial, and his ability to labor, the experts testifying for the defendants take issue with plaintiff and his witnesses. But it is to be noted that the evidence of the expert witnesses on both sides of this litigation is based on X-ray photographs taken of the injured arm at various times after the occurrence of the accident. These pictures, indefinite in number, were produced in court, identified, and the results of the examinations thereof by the several witnesses detailed to the jury, both on direct and cross-examination. These photographs were used in the presence of the trial judge and the trial jury, but were not formally introduced in evidence, and were not preserved in the bill of exceptions. In this situation we are called upon by defendants to reduce a verdict as excessive.

The language employed by Good, J., in *Maryland Casualty Co. v. Geary*, 123 Neb. 851, is quite enlightening on the point here presented, viz.: "The trial court saw and observed the physical condition of defendant, the character and extent of his injuries, as he appeared in court. During the course of the trial, several X-ray photographs of defendant's cervical vertebræ were used and exhibited to the trial court, and witnesses pointed out thereon the various matters that were supposed to be disclosed thereby. Colloquies were had between the witnesses and the trial judge with reference to these photographs and the condition therein disclosed. None of these, save one, is in the record presented to this court. These photographs undoubtedly were of great help to the trial court in determining the weight to be given to the testimony of the medical witnesses. The opportunity to see and observe the defendant, the extent and character of his injuries and what these X-ray photographs disclosed is denied to this court. It clearly appears that the trial court was in a vastly better position, than is this court, to determine the weight to be given to the testimony of the medical witnesses, and to ascertain the true condition of defendant's injuries and resulting disability." It is quite apparent that if the term "left arm" be substituted for "cervical vertebræ" the conclusion stated is controlling here, particularly in view of the fact that, while one photograph was preserved in the record in the case quoted from, none of those employed appear in the present case.

From an examination of the record presented in this court, and bearing in mind the superior opportunity of the trial judge and trial jury to truly ascertain the facts, we are unable to say as a matter of law that the verdict returned by the jury and approved by the district court is excessive, or that error affirmatively appears.

It follows that the judgment of the trial court may not be deemed excessive, and the same is

AFFIRMED.